FRANK KERTING

*v.*

I. G. HATCHER.

*Opinion filed June 23, 1905.*

CONTRACTS—*provisions of written contract must control in accounting.* Allegations in a bill for an accounting, that things were understood or rights recognized or acknowledged in direct conflict with the written agreement of the parties understandingly entered into, must be ignored and the rights of the parties determined from the contract itself, there being no question of fraud involved.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

LEON HORNSTEIN, for appellant.

RANDALL W. BURNS, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Cook county sustained the demurrer of appellee, I. G. Hatcher, to the amended bill of complaint filed by Frank Kerting, appellant, to compel appellee to account for alleged profits of a lithographing business by virtue of a contract between said parties dated October 31, 1890, from the date of said contract to December 4 of the same year. The bill was dismissed at appellant's cost for want of equity, and on his appeal the decree was affirmed by the Branch Appellate Court for the First District.

The facts set forth in the amended bill are, in substance, as follows: The Kerting Lithographing Company, a corporation with a paid up capital stock of $25,000, of which complainant owned four-fifths, made an assignment in May, 1890, for the benefit of its creditors. At that time there were on

the premises of the corporation, stock and goods worth about $2000, the property of complainant, not included in the assignment. In July, 1890, the property of the corporation was sold by order of the county court and purchased by Frank N. Gage, who held the same in trust for complainant until October 31, 1890, when the defendant furnished $5000 to take the property from Gage, including what was left of complainant's property not used up in carrying on the business, and to hold the same for one month for a consideration of $500, with an option to complainant to purchase it. At that time complainant and defendant entered into a written contract reciting that defendant had placed $5500 in the hands of a broker to be used in the purchase of the lithographing plant from Gage, upon the express understanding that the title, free from all debts and liabilities of every kind, should be vested absolutely with possession in the defendant. By the contract defendant agreed to sell the plant to complainant on or before December 4, 1890, for $5500 and no more, unless other sums of money should have been laid out and invested by defendant in the protection of his title to the plant or in the proper conduct or management of the business, and against any money so expended the money received in the course of the business was to be credited, the defendant being in possession as the absolute owner and giving to complainant an option until December 4, 1890, to purchase the plant on said terms. Complainant agreed to devote his time and energies to the business, and to receive in full pay for his time and services $20 a week. Defendant was to have an option to have a corporation organized, or if he accepted from complainant the $5500 advanced in the purchase of the plant, defendant was to receive payment *pro rata* for all unfinished work on account of labor and material furnished by him. The property alleged to belong to complainant was included in the transfer to defendant by agreement. Five thousand dollars was the amount actually paid by defendant, and the difference between that sum and $5500 was

to compensate him for his money, time and trouble. On December 4, 1890, at the expiration of the option contained in the contract of October 31, 1890, the complainant procured William K. Hilton to take the property, and defendant, at the request of complainant, transferred the same by bill of sale to Hilton, in trust for complainant, in consideration of $5500. The property which complainant claimed to own was included in the property which had come through the assignee's sale, and, so far as unused or not disposed of, was transferred to Hilton. The parties estimated the cost of unfinished work then on hand at $230, which was paid to defendant in accordance with the contract. By the bill of sale to Hilton complainant assumed all accounts and liabilities and was to receive all bills due or payable, and complainant witnessed the instrument by the following writing: "Sealed and delivered in the presence of and at the request of Frank Kerting."

Complainant alleged in his bill that at the time of making his contract with defendant the plant was reasonably worth $15,000, and was held in trust for him by defendant; that the understanding was that the property and accounts were to be so held in trust, and defendant acted upon that understanding; that defendant advanced considerable money to run the business while in his possession and received from the business sums in excess of such expenses; that no account was taken of the sums paid out and received by defendant, but defendant stated that a credit was due complainant and he would afterward account for and settle the same; that defendant at various times acknowledged his liability to account, but after repeated demands stated that there were no profits, and refused to account or pay over the moneys due to complainant.

We are of the opinion that the circuit court and Appellate Court came to a correct conclusion, and that the bill did not state a case for equitable relief. There is no charge of fraud, and the rights of the parties must be determined by the writ-

ten agreement, which clearly stated their respective rights and interests in the property. Allegations that things were understood or rights recognized or acknowledged in direct conflict with the provisions of the written agreement understandingly entered into must be ignored, as was held in the case of *Kerting* v. *Hilton,* 152 Ill. 658, where a similar contract between Kerting and Hilton respecting the property was under consideration. In this case the agreement recited that defendant had placed $5500 in the hands of a broker to purchase the plant, upon the express consideration that the title, free from all debts and liabilities of every kind, should be vested absolutely in him. Complainant agreed to devote his time and best energies to the business and to accept in full pay and satisfaction for his services $20 a week, and he was to have an option until December 4, 1890, to purchase the plant for $5500. Complainant was to receive no more than that sum unless there was a balance in his favor on account of expenditures in the business above the receipts, and he was to receive payment *pro rata* for the unfinished work on account of labor and material furnished by him. When complainant availed himself of the option by procuring Hilton to take the property the unfinished work was estimated at $230, which sum was paid to the defendant. The intention of the contract was to protect the defendant against any further investment than the amount paid for the plant, so that he would receive $5500 clear if complainant should purchase the plant. Whatever property complainant had was included in both sales, and the bill alleged that the sale to Hilton was at the special request of complainant and for his benefit. By the contract the defendant became the absolute owner of the plant, and there was no provision that complainant should have the profits of the business or any share of them. Defendant was not bound to account for the profits of his own business merely because he had given an option to complainant to purchase the plant, and to allow the complainant the profits would be in direct contravention of his agreement to

render his services for $20 a week. The provision for crediting money received in the course of the business against expenses, for the purpose of determining whether any more than $5500 must be paid, .would not authorize the relief prayed for, or entitle complainant to receive the profits of the business, if there were any, in addition to the compensation agreed upon.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*